CARTER *v.* FORD

No. 41888          June 5, 1961          130 So. 2d 852

*John B. Gee,* Vicksburg, for appellant.

*Aaron L. Ford,* Jackson, for appellee.

Lee, P. J.

Aaron L. Ford, the owner of a 45/56 interest in the 216 acres of land, described in the bill of complaint, alleged that, on account of the nature of the land and the lack of improvements, it would be impossible to partite the same in kind, and he therefore prayed for a sale and division of the proceeds.

Mamie Cross Carter, the owner of an undivided 7/56 interest therein, by her answer, denied that the land could not be divided in kind, and prayed specially for such division.

Four parties, named defendants, to wit, Willett Richardson Taylor, Lucille Richardson Lewis, Nellie Mae Richardson Gilmore, and Eliza Richardson, each owning a 1/56 interest, failed to appear, and a decree pro confesso and final decree were rendered against them.

On the issue of whether the land is susceptible of division in kind, the petitioner introduced three witnesses, Richard Prassel, a surveyor, who was also engaged in farming and stock-raising; Major J. B. Luter, a real estate salesman; and J. R. Shuff, a farmer, who has also worked with the Soil Conservation Service.

The property, situated about eight miles from the Town of Edwards, was viewed by these witnesses at the same time. Although the weather had been dry for several weeks, they said that they could not drive their car all the way to the property.

In Prassel's opinion the tillable part of the tract amounts to only 23 or 24 acres, and the residue is timberland, partly or wholly in swamp. The high land is along the bank of Big Black River, which forms the western boundary. He saw "a good bit" of pulpwood, and estimated that there were three or four trees of low grade merchantable timber per acre on the swamp tract. If all of the land should be deemed of the same value, a 1/56 interest would be about 3.85, a 7/56 interest would be about 27 acres, and the 45/56 interest would amount to 173.57 acres. There are no improvements. In his opinion the land is suitable for growing timber and pasture. He thought that the land would be hard to divide because of the difference in its nature, and the necessity to cross other property; but he said that a tract of 173 acres could be set off separate from the other land and have comparable value. In his opinion, the cost of a survey to effect a division would run from $700 to $1,000.

Luter's evidence was along the same line. He thought that the property would be worth more as a whole tract and that a man could not make a living on one-half or two-thirds of it. He was asked if it could be divided so that several tracts would have about an equal amount of the different types of land, and he said, "You could divide it up"; but he then said he did not know how to get an even valuation on each tract.

Shuff's evidence as to location and nature was substantially the same as the other two witnesses. He admitted that the land could be separated and divided into several tracts.

In the opinion of these three witnesses, the land was worth from $14 to $17 an acre.

Mamie Cross Carter testified that she was born and reared on this land. When she lived there, row crops were grown and she worked in the field. She left the place in 1927, but expects to retire in about three years, and wants to farm her part of the place.

Ike Richardson, a cousin of Mamie, testified that he farmed the place from 1926 until 1948 that he had about 25 acres in cultivation, and grew cotton, corn, peanuts, etc.; and that the Biedenharn farm has cotton which is growing less than one hundred yards from the east line of the Richardson tract.

G. E. Strickland of Vicksburg, Mississippi, an engineer and surveyor for twenty-five years, testified that he went completely around and through this tract of land several times, and found that it contained about 216 acres. He offered a map which he had made of the area. He also used and offered in evidence a Government quadrangle sheet of the area. According to this map, it is at least one-half mile from the east boundary of the Richardson tract before any change in elevation is noted. The map also shows a road, leaving Highway 80 at a point south of Smith Station, and leading to the property. The witness said that he drove directly to the southeast corner of the place by following a road used by Mr. Biedenharn and others. He said that this tract of land is susceptible of partition in kind, and that it would be no problem to him at all to divide it. He gave a detailed statement as to how this could be done. At present, there is timber on about two-thirds of the place. The other one-third is in open fields and had been cultivated in the past. Some of it is now grown up in patches of

gum timber. Along the southeast corner, cultivated fields are within one hundred to one hundred and fifty feet of this land. In his opinion, the land is worth $50 an acre, excluding the timber. He could divide the land into five or six separate tracts, if done in the winter, for approximately $400; and, if done in the summer, for between $400 and $500.

The record discloses that the land, when bid in at the sale by petitioner Ford, brought $6,000.

In the case of Cox v. Kyle, 75 Miss. 667, 23 So. 518, this Court said: "The common law gave to joint owners of land a right to have a partition in kind, and the right of selling the land and of dividing the proceeds given by the statute, is an innovation upon the common law, and as it takes away from the owner the right to keep his freehold in kind, it must be strictly pursued, and it must appear from the record that an equal division cannot be made, or that a sale of the land will better promote the interest of all parties than a partition in kind", citing authorities. There was no proof of the necessity or propriety of a sale, and the cause was reversed.

In the case of Smith v. Stansel, 93 Miss. 69, 46 So. 538, there were two parties, each of whom owned an undivided one-half interest in 100 acres of land. There was a prayer for partition, or, in the alternative, for a sale and division of the proceeds in case it was found incapable of a fair and equitable partition in kind. No evidence was offered but the court ordered a sale. The opinion of the Court said: "Where it is possible to order a partition in kind with due consideration for the interest of all parties, that mode of partition is preferable under the law. A sale for partition is only ordered where it will better promote the interest of all parties than a partition in kind, or where an equal division in kind cannot be made." It was further pointed out that there was no proof to show that a partition in kind could

not be made, and the opinion said that "on the face of it, the record shows that the land could be divided in kind. We can hardly imagine a case where it would be necessary to sell one hundred acres of land in order to equitable partite same though it is possible that such case might exist", citing Cox v. Kyle, supra.

In the case of Shorter v. Lesser, 98 Miss. 706, 54 So. 155, Lesser owned three-fourths and Shorter the other one-fourth of the tract of 80 acres. Lesser alleged that the land was not susceptible of partition in kind and that a sale would better promote the interests of the parties. On the contrary, Shorter replied that it was susceptible of partition in kind and expressed a willingness to give or take owelty. Commissioners were appointed to partite in kind, if practicable. They filed a plat of their survey and reported that the land was not susceptible of partition in kind even by giving and taking owelty. They did not give any substantial reason why the division could not be made in kind. Several witnesses besides Shorter testified that the land could be divided in kind. The land was substantially similar. This Court, in reversing the decree, which ordered a sale, pointed out that the law looks with favor upon a partition in kind and with disfavor upon a sale thereof unless it appears that an equal division cannot be made in kind, or that a sale will better promote the interest of all parties than a partition in kind. The opinion said that the party, seeking to obtain a sale of the land, must bring his case clearly within the statutory provision, and that "He must show conclusively that an equal division cannot be made, or that a sale would be more beneficial, or less injurious, than an actual division." While observing that such a case may occur, the opinion said: "It is difficult to conceive a case wherein it would be necessary to sell eighty acres of land, lying as this land does, to equitably divide it between two parties, owning a three-fourths and one-fourth interest, respectively." It also called attention

to the fact that owelty may be given or taken in order to equalize the respective shares.

In Johnson v. St. Catherine Gravel Co., 218 Miss. 713, 67 So. 2d 712, the gravel company owned a one-fourth interest in 135 acres of land. Twenty-seven defendants, with interests varying from 1/16 to 1/264, owned an aggregate of 3/4. The gravel company sought to have a sale of the land and a division of the proceeds. The defendant alleged that the lands were capable of equitable partition in kind by allotting to the complainant one-fourth, and to the defendants three-fourths, as a unit, with or without owelty, if necessary. The trial court adjudged that a partition in kind was impractical and ordered a sale and division of the proceeds. This Court, after citing the above-mentioned cases, reversed the cause in order for the trial court to determine the susceptibility of an equitable division in kind, with or without owelty, one-fourth to the company and three-fourths as a unit to the defendants.

Section 965, Code of 1942, Recompiled, provides as follows: ''If, upon hearing, the court be of opinion that a sale of the lands, or any part thereof, will better promote the interest of all parties than a partition in kind, or if the court be satisfied that an equal division cannot be made, it shall order a sale of the lands, or such part thereof as may be deemed proper and a division of the proceeds among the co-tenants according to their respective interests; and the court may appoint a commissioner to make the sale, and may make all proper orders to protect the rights of the parties interested; *and may decree the sale of a part of the land and the partition in kind of the residue.*'' (Emphasis supplied.)

It is true that the witnesses for the appellee, on direct examination, expressed opinions to the effect that it would be ''hard'' to divide this land in kind for several reasons. One of the witnesses expressed the opinion that the land ''is worth more as a whole tract.'' But, on cross-

examination all of them admitted that the land can be divided. Taking this evidence of both the appellee and the appellant as to the susceptibility of this land to a division in kind, the Court is of the opinion that the appellee failed to meet the burden required of him, and that he did not "show conclusively that an equal division cannot be made, or that a sale would be more beneficial, or less injurious, than an actual division". Shorter v. Lesser, supra. It seems obvious, on its face, that this 216 acres of land can be divided in kind; and this should be done, if practicable.

The trial court appeared to be influenced somewhat by the cost that may accrue because of a partition in kind. While that is a consideration, at the same time, it is not necessarily controlling.

The appellant sought a sale and division of the proceeds. The four parties, with the 1/56 interest each, failed to file any plea, and, presumably, have no interest one way or the other. Mamie Cross Carter was very desirous of a partition of her interest to her in kind.

The Court is of the opinion that this land is susceptible of a partition in kind, as follows: The trial court should have the 7/56 interest of Mamie Cross Carter in the land set apart to her, providing owelty, if necessary; and, when this has been done, it should order the remaining part of the land sold and the proceeds divided among the other five parties as their interests may appear. Section 965, supra, affords ample authority for that course.

Consequently, the decree of the trial court is reversed, and a decree will be entered here with directions to the trial court to partite the land in kind, in part, and sell the remaining part for division of the proceeds, as stated above.

Reversed and decree here with directions.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.*, concur.