990 So.2d 813 (2008)
Ann Timothy GEORGIAN, Peter Timothy Georgian and Gus Timothy Georgian, Appellants,
v.
Georgia Beldekas HARRINGTON, Appellee.
No. 2007-CA-00849-COA.
Court of Appeals of Mississippi.
September 16, 2008.
*814 Moran M. Pope, Hattiesburg, attorney for appellants.
Kimberly L. Guthrie, Matthew W. O'Quain, attorneys for appellee.
Before LEE, P.J., ISHEE and ROBERTS, JJ.
ISHEE, J., for the Court.
¶ 1. This is an appeal from the judgment of the Forrest County Chancery Court holding that certain parcels of real property owned by four co-tenants could best be divided by selling the property at a public sale, rather than by dividing the property in kind. Appellants, Ann Timothy Georgian, Peter Timothy Georgian and Gus Timothy Georgian (Georgians), appeal, asserting that the chancellor erred by not ordering the property to be divided by partition in kind, given that this is the preferred method in Mississippi. Further, the Georgians argue that there was insufficient evidence to support a partition by sale, and at the very least, the chancellor should have ordered the property to be partitioned partially in kind and partially by sale. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. On June 7, 2005, a complaint for partition was filed by the Georgians against Georgia Beldekas Harrington. The complaint alleged that the Georgians and Harrington owned, as tenants in common, certain real properties in Forrest, Lamar, and Harrison Counties. Specifically, the Georgians each owned a one-sixth interest in each piece of property, and Harrington owned a one-half interest.
¶ 3. At the chancellor's invitation, the parties submitted names of appraisers to the chancery court. After reviewing the recommendations, the chancellor appointed Doug Davis to appraise the properties and make a recommendation as to how they should be divided. Specifically, the chancellor ordered Davis to issue a report recommending whether the properties should be divided: (1) by sale, (2) in kind, or (3) partially in kind and partially by sale. If Davis recommended that the property be divided in kind, he was to submit a plan of division to the chancellor. If he recommended that the property be divided partially in kind and partially by sale, he was to submit a "detailed report" explaining how each property would be sold or divided in kind.
*815 ¶ 4. On March 2, 2006, Davis submitted his report and recommendation to the chancellor. The report grouped the various parcels of property in Forrest and Lamar Counties into five parcels and assigned a value to each. The report described each parcel as follows:
Parcel 1, known as Scovill Shopping Center, is a commercial property located at 821-831 Hardy Street in Hattiesburg, Mississippi. The property appraised for $310,000 and was assigned an effective gross income of $62,083.
Parcel 2, a "service station," is a commercial property located on 902 Hardy Street in Hattiesburg, Mississippi. The property appraised for $39,500 and was assigned an effective gross income of $5,700.
Parcel 3 is a commercial property located at 100-102 Pinehurst Street in Hattiesburg, Mississippi. The property appraised for $55,000 and was assigned an effective gross income of $11,400.
Parcel 4 is comprised of a three-unit office complex and residential duplex and located at 103 and 105 Broad Street in Hattiesburg, Mississippi. The property appraised for $150,000 and was assigned an effective gross income of $22,680.
Parcel 5 is comprised of a mix of commercial and residential properties located on Hwy 11 and Logaras Circle in Purvis, Mississippi. The property appraised for $158,000 and had no effective gross income.
Davis did not appraise Parcel 6 containing two residential lots in Harrison County. However, the parties stipulated that the property's value was $6,000.
¶ 5. A hearing was held on March 29, 2006, in which Davis was the only witness. Davis testified that based on his report and knowledge of the ownership during the appraisal process, it was his expert opinion that the properties should be sold with the proceeds divided pursuant to the ownership interest of each party. Davis noted that inequities found in the income production of the various parcels of property, the respective conditions of each property, as well as their close proximity to one another made it unlikely that the property could be divided evenly. Following the hearing, an order was entered giving the parties the opportunity to submit a confidential proposal to the chancellor "as to how the properties may or should be divided in kind or partially in kind and partially by sale, in lieu of selling all the properties and dividing the proceeds among the owners." The Georgians submitted a proposal to the chancellor, but Harrington did not. Instead, Harrington chose to rely on Davis's recommendation.
¶ 6. On March 6, 2007, the chancellor entered a judgment holding that the "more equitable remedy" was to sell the properties and divide the proceeds according to the parties' ownership interest. The chancellor noted that this procedure would "bring the best values of the properties." The judgment also made note of an unsolicited offer "from a local realtor" to purchase one of the parcels for an amount "in excess of the appraisal on file." According to the judgment, the unsolicited offer was to be placed in the file and accepted on that parcel. Subsequently, the parties filed a joint motion to amend the judgment to remove the language regarding the unsolicited offer, which was granted by the chancellor. The Georgians filed their appeal on May 17, 2007.

STANDARD OF REVIEW
¶ 7. "The standard of review for property partition cases is whether this Court finds manifest error in the decision of the chancellor, only then will this Court reverse the findings of the chancellor." *816 Lynn v. Lynn (In re Will of Lynn), 878 So.2d 1052, 1055(¶ 11) (Miss.Ct.App.2004) (citing Robberson v. Burton, 790 So.2d 226, 228(¶ 9) (Miss.Ct.App.2001)).

DISCUSSION

Did the chancellor err in ordering that the property be partitioned by sale rather than by partitioning it in kind?
¶ 8. A partition in kind is the preferred method of partition of property under Mississippi law. Shaw v. Shaw, 603 So.2d 287, 290 (Miss.1992) (citing Monaghan v. Wagner, 487 So.2d 815, 819-20 (Miss.1986)). "The propriety of a partition sale or partition in kind is determined on a case-by-case basis." Fuller v. Chimento, 824 So.2d 599, 601(¶ 9) (Miss.2002) (citing Wight v. Ingram-Day Lumber Co., 195 Miss. 823, 828-29 17 So.2d 196, 197 (1944)). "To justify a partition by sale, the party seeking the sale must bring his case squarely within [Mississippi Code Annotated section 11-21-11 (Rev.2004)]." Id. Section 11-21-11 states in pertinent part that:
If, upon hearing, the court be of the opinion that a sale of the lands, or any part thereof, will better promote the interest of all parties than a partition in kind, or if the court be satisfied that an equal division cannot be made, it shall order a sale of the lands, or such part thereof as may be deemed proper, and a division of the proceeds among the cotenants according to their respective interests.
Miss.Code Ann. § 11-21-11 (Rev.2004).
¶ 9. "The use of the conjunction `or' in this statutory scheme provides for a two-prong inquiry into the propriety of a partition sale. A partition sale can be had if it will (1) `better promote the interest of all parties than a partition in kind' or (2) `if the court be satisfied that an equal division [of the land] cannot be made.'" Fuller, 824 So.2d at 602(¶ 9) (citing Unknown Heirs at Law of Blair v. Blair, 601 So.2d 848, 850 (Miss.1992)). "Affirmative proof of at least one of these statutory requirements must affirmatively appear in the record in order for the court to decree a partition by sale." Id. "Further, the chancellor has no authority to decree a sale unless the statutory requisites are `clearly' met and a `substantial reason' exists for choosing partition by sale over partition in kind." Blair, 601 So.2d at 850 (citing Shorter v. Lesser, 98 Miss. 706, 712, 54 So. 155, 156 (1911)). The joint owner seeking a partition sale has the burden of proving that the land is not susceptible to partition in kind and that a sale is the only feasible method of division. Overstreet v. Overstreet, 692 So.2d 88, 90-91 (Miss.1997).
¶ 10. In this case, the Georgians argue that the chancellor lacked affirmative proof to support his decision to partition the property through a public sale. Specifically, they contend that Harrington failed to meet her burden of proving that a partition in kind could not be achieved and that selling the subject property was the only feasible method of division. Harrington contends that she relied upon Davis's report and recommendation that the properties could not be evenly divided and a partition by sale was in the best interest of the parties, and the report, as well as Davis's expert opinion, established affirmative proof to support the chancellor's decision. As previously stated, this Court reviews the appropriateness of a partition by sale on a case-by-case basis. Therefore, it is necessary to review the evidence placed before the chancellor in determining whether his decision was supported by affirmative proof.
¶ 11. It is clear from the record that the chancellor was presented with sufficient evidence to determine that a partition by sale was appropriate. Of great *817 significance is the appraisal report presented by Davis. Davis was appointed by the chancellor and accepted, without objection, by the Georgians and Harrington as an expert in the field of real estate appraisals. After appraising five out of the six parcels of property and issuing a one-hundred-page report, Davis testified before the chancellor that it was his expert opinion that the properties should be sold rather than partitioned in kind. Davis admitted that the chancellor's order required him to consider three options for dividing the property. However, in trying to compare the values, the location, the property type, and property use of each parcel, he could not envision a way that the properties could be equally divided.
¶ 12. At the hearing, Davis noted several reasons for recommending that the property be sold. First, each of the properties was suffering from an overall lack of maintenance, and Davis was worried that any prolonged neglect would lead to a deterioration in the value of each property. Second, Davis found inequities in the income production of those parcels considered to be income-producing properties. Specifically, Parcel 1 was found to be the most valuable piece of property based on both its location and ability to produce a level of income that surpassed Parcels 2, 3, and 4 combined. Interestingly, this inequity is made even more apparent in the Georgians' brief, in which they offered three examples of how they believed the property could be partitioned in kind. In each example, the Georgians awarded Parcel 1 to themselves. A final factor that Davis considered in making his recommendation was that because of the location of the properties, a partition in kind could force the Georgians and Harrington to become adjoining landowners. He testified:
... the commercial property [Parcels 1, 2, 3 and part of 4] and the duplex [part of Parcel 4] are located in very close proximity to one another ... I did notice that there's almost a neighborhood difference from the north side of Hardy Street to the south side of Hardy Street.
Through Davis's process of inspecting and appraising each of the properties, he apparently perceived a risk of future problems that could result from forcing the parties to be adjoining landowners. These factors taken together led Davis to the opinion that a sale was in the best interest of all parties involved.
¶ 13. We find no error in Davis's appraisal of the properties and believe that the chancellor did not abuse his discretion by relying on his report. "It is settled law that the weight to be accorded expert opinion evidence is solely within the discretion of the judge sitting without a jury." Newsom v. Newsom, 557 So.2d 511, 515 (Miss. 1990) (quoting Pittman v. Gilmore, 556 F.2d 1259, 1261 (5th Cir.1977)). It is undisputed that the Georgians accepted Davis as an expert in the field of real estate appraisals without objection. They were also made aware of his report and opinion that a public sale would be in the best interests of the parties. Harrington was well within her right to rely on Davis's report without being required to offer any additional evidence, given that Davis's opinion supported her case. If the Georgians disagreed with Davis's findings, they could have employed their own expert to refute those findings. However, they chose not to do so.
¶ 14. Further, the record is clear that the chancellor did not rely solely on Davis's appraisal in making his determination that the property should be sold. After viewing the appraisal report and listening to Davis's testimony, the chancellor allowed the Georgians and Harrington to offer their own suggestions on how the property should be divided. The chancellor *818 considered a recommendation made by the Georgians that included three different proposals for dividing the property in lieu of a sale. It is apparent that after weighing the recommendations of both the Georgians and Davis, the chancellor gave more credence to Davis's opinion. As previously stated, this decision was well within the chancellor's discretion. We find nothing in the record that would lead us to believe that the chancellor abused his discretion by assigning more weight to Davis's opinion.
¶ 15. Accordingly, we find that the chancellor was presented with affirmative proof that a partition by sale was in the best interests of the parties. Therefore, the chancellor did not err by ordering the property to be sold and dividing the proceeds equally between the Georgians and Harrington. The judgment of the chancery court is affirmed.
¶ 16. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.